

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3080 | **DATE** | 8/6/2001 |
| **CASE TITLE** | Kevin Jay Long vs. Todd Williams, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to strike [4-1] and to dismiss plaintiff's complaint [4-2] is granted. Judgment is entered in favor of the defendants and against the plaintiff. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 7 2001 date docketed | |
| X | Docketing to mail notices. | | | 6 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | FILED FOR DOCKETING  01 AUG -6 PM 3: 59 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN JAY LONG,                )
                               )
        Plaintiff,             )
                               )    No. 01 C 3080
    v.                         )
                               )    Judge Ruben Castillo
                               )
POLICE OFFICER TODD WILLIAMS   )
(Star 12), POLICE OFFICER PATRICK )
ZIMMERMAN (Star 28) and        )
SERGEANT WILLIAM WAGNER        )
(Star 81),                     )
                               )
        Defendants.            )

**DOCKETED**

**AUG - 7 2001**

## MEMORANDUM OPINION AND ORDER

Kevin Jay Long filed this *pro se* lawsuit against Officers Todd Williams, Patrick Zimmerman and Sergeant William Wagner of the Vernon Hills Police Department (collectively "Defendants"), alleging: (1) a violation of his civil rights, 42 U.S.C. § 1983; (2) federal false arrest/ false imprisonment; and (3) state false arrest/ false imprisonment. Defendants have filed a motion to dismiss, (R. 4-1), which we grant for the reasons stated below.[1]

### RELEVANT FACTS

On May 3, 1999, Officer Zimmerman stopped Long's vehicle in the Rivertree Plaza

---

[1] Defendants' motion cites both Rule 12(c) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, indicating that they seek judgment on the pleadings or dismissal of the case for failure to state a claim on which relief can be granted. Because Defendants have not yet filed an answer to the complaint, the 12(c) motion is premature. We shall adopt the common practice of treating the premature Rule 12(c) motion as a Rule 12(b)(6) motion. *Seber v. Unger*, 881 F. Supp. 323, 325 n.2 (N.D. Ill. 1995). This technical procedural point will not affect the outcome of this opinion because the standard for consideration is the same for Rule 12(c) and Rule 12(b)(6) motions. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).

parking lot in Vernon Hills for having an expired registration sticker. Officer Williams and Sergeant Wagner were present in their vehicles for backup assistance. Defendants informed Long that he fit the general description given by a woman with whom he had allegedly conducted a sexual conversation earlier that day, and they questioned him regarding the incident. Long denied having had the conversation. However, he cooperated fully with Defendants during the stop. After receiving Long's consent, Officer Zimmerman searched his vehicle but recovered no contraband. Officer Williams next questioned Long about an earlier incident also involving a sexual conversation with other women that allegedly occurred on November 7, 1998. Long again denied having any knowledge of that incident. At that point, the officers arrested Long for disorderly conduct pursuant to the Village of Vernon Hills code. (R. 1, Pl.'s Compl. ¶ 25 ("pursuant to Chapter 14, Article V, Section 14-211, Subsection (1) of Village of Vernon Hills Code, to commit the offense of Disorderly Conduct one must '[do] any act in such [an] unreasonable manner as to alarm or disturb another and to provoke a breach of the peace'").) Sergeant Wagner took Long to the Vernon Hills Police Department for processing. At the Police Department, Officer Zimmerman took a photograph of Long in order to show it to the women involved in the November 7 incident. Long was then charged with disorderly conduct. He was in custody for approximately two hours before being released.

On May 13, 1999, Long's name and address as well as the details of his May 3, 1999 arrest appeared in the Pioneer Press suburban newspapers and on the internet. On June 21, 1999, the charge regarding the May 3 incident was dismissed because the woman in question refused to

appear.[2]

Long filed this lawsuit on April 30, 2001, alleging that Defendants violated his civil rights because they arrested him without a warrant and without probable cause. Currently pending before this Court is Defendants' motion to dismiss. For the reasons stated below, we grant Defendants' motion to dismiss.

## LEGAL STANDARDS

### I. Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). The Court views all well-pleaded factual allegations in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir. 1993). The Court will only grant a motion to dismiss if it is clear that the plaintiff can prove no set of facts warranting relief. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000) (citations omitted).

### II. *Pro Se* Plaintiff

*Pro se* complaints are to be liberally construed and are not held to the stringent standards expected of pleadings drafted by lawyers. *Id.* A *pro se* civil rights complaint may only be

---

[2] On May 7, 1999, Officer Williams secured a warrant for Long's arrest for the disorderly conduct incident that allegedly occurred on November 7, 1998. That case was dismissed on March 22, 2000 because the complainants refused to appear. Long's complaints in the instant case are not based on facts associated with the November 7 incident.

dismissed for failure to state a claim if it is beyond doubt that there is no set of facts under which plaintiff could obtain relief. *Id.*

## ANALYSIS

**I. Section 1983 and Federal False Arrest and False Imprisonment Claims**

With regard to Long's 42 U.S.C. § 1983 and federal false arrest and false imprisonment claims, the central issue is whether the officers had probable cause to arrest Long. If Defendants can demonstrate the existence of probable cause, these claims would be barred. *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993) (stating that probable cause is an absolute bar to defendant's § 1983 liability for unlawful arrest, false imprisonment, or malicious prosecution); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) (same).

Probable cause is "a commonsense determination, measured under a reasonableness standard," *Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998), and is present if, at the time of arrest, "the facts and circumstances within [the arresting officer's] knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense," *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently received information. *See Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994). The concept of probable cause "seeks to accommodate the interests of effective law enforcement, on the one hand, versus the privacy and liberty interests possessed by citizens who follow the law. The police, in determining whether probable cause exists, must assess probabilities in specific factual scenarios, and such assessment is not conducive to precise legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

4

In this case, Long argues that Defendants did not have probable cause to arrest him. First, he points out that he was arrested without a warrant. (R. 1, Pl.'s Compl. ¶ 17.) However, a warrant is not constitutionally mandated for an arrest made in a public place. *United States v. Watson*, 423 U.S. 411, 414-22 (1976); *United States v. Fernandez-Guzman*, 577 F.2d 1093, 1097 (7th Cir. 1978). Furthermore, an officer may arrest a suspect without a warrant for an offense which did not occur in the officer's presence. *United States v. Moore*, 215 F.3d 681, 685 (7th Cir. 2000). In addition, we note that the Supreme Court has "consistently accorded law enforcement officials greater latitude in exercising their duties in public places." *Florida v. White*, 526 U.S. 559, 565 (1999).

Long also contends that Defendants lacked probable cause to arrest him because the arrest was based only on a "general suspect description" and not on a positive identification. (R. 3, Pl.'s Resp. to Defs.' Mot. to Dismiss ¶¶ E-F.) Furthermore, Long claims that probable cause was lacking because the alleged victim: (1) never viewed him in a lineup, (R. 1, Pl.'s Compl. ¶ 19); (2) never positively identified him, (*id.*); and (3) never signed a complaint against him, (*id.*). The Seventh Circuit, however, has "consistently held that 'once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.'" *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995) (quoting *Garcia v. Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)). In this case, Long admits that Defendants had determined and explained to him, before his arrest, that he fit the general description given by the alleged victim of her perpetrator. (R. 1, Compl. ¶ 13.) Thus, we find that Defendants did have probable cause to arrest Long, and no further investigation was constitutionally required. *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir.

5

1989) ("Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."); *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) (quotations omitted) ("Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.").

Finally, Long argues that the Vernon Hills disorderly conduct statute under which he was arrested was unconstitutional because it violated the First Amendment and, thus, Defendants did not have probable cause to arrest him. We disagree. In *Michigan v. DeFillippo*, 443 U.S. 31 (1979), the Supreme Court concluded that the fact that the Detroit ordinance in question was determined to be invalid after the arrest had taken place did not undermine the validity of the arrest. The Court explained:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality – with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served it if police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Id.* at 38. Furthermore, the Court stated: "police action based on a presumptively valid law [is] subject to a valid defense of good faith. . . . A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). For these reasons, we find that Defendants had probable cause to arrest Long.[3]

---

[3] We note that, in their motion to dismiss, although Defendants did not raise the defense of qualified immunity, they would have been entitled to that defense. "[Q]ualified immunity

6

Therefore, we grant Defendants' motion to dismiss Counts I and II of the complaint.

## II. State False Arrest and False Imprisonment Claims

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101 *et seq.*, the applicable statute of limitations for the state law claims of false arrest and false imprisonment against a local entity or its employees is one year. 745 ILCS 10/8-101 ("No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). *See Jordan v. Van Dyke*, No. 99 C 5357, 2000 WL 126784, at *2 (N.D. Ill. Feb. 1, 2000) ("Illinois law truncates to one year the limitations period for civil suits against municipal actors"); *DiBenedetto v. City of Chicago*, 873 F. Supp. 106, 108 (N.D. Ill. 1994) (applying one-year statute of limitations to dismiss common law claims of malicious prosecution and false imprisonment against city filed one year and one day after they accrued). Given the plain meaning of the statute and that "local public entity" as defined in the Tort Immunity Act includes a "township, municipality . . . and all other local governmental bodies," 745 ILCS 10/1-206, Defendants clearly fall under the domain of the Tort Immunity Act. *Pierce v. Pawelski*, No. 98 C 3337, 2000 WL 1847778, at *1 (N.D. Ill. Dec. 14, 2000) (applying Tort Immunity Act to civil action brought against police officers); *Cooper v. Butler*, No. 92 C 5604, 1995 WL 399009, at *4-5 (N.D. Ill. June 29, 1995) (same). *See Luciano v. Waubonsee Cmty. Coll.*, 614 N.E. 2d 904, 908 (Ill. App. Ct. 1993) (explaining "that various

---

protects arresting police officers from suit if a reasonable officer would have believed the arrest to be lawful, in light of clearly established law and the information that the arresting officers possessed. This standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) (citation omitted).

7

public entities, although not expressly identified in [§ 1-206], are within the definition of 'local public entity'" within the dictates of the Tort Immunity Act).

Long, however, asserts that a two-year statute of limitations should apply. We disagree. Long argues that because actions brought under § 1983 apply the corresponding state statute of limitations, the two-year Illinois general personal injury limitations period, 735 ILCS 5/13-202, applies to his state law claims.[4] (R. 3, Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ J.) This Circuit has recognized that 735 ILCS 5/13-202 applies to federal civil rights claims arising in Illinois. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). However, although the two-year statute of limitations under 735 ILCS 5/13-202 applies to *federal* claims under section 1983, "a federal court applies to *state-law* claims the same limitations period a state court would apply." *Ellis v. City of Chicago*, No. 2000 C 2457, 2000 WL 1774084, at *6 (N.D. Ill. Dec. 1, 2000) (emphasis added). Therefore, while a two-year statute of limitations applies to Long's federal claims, a one-year statute of limitations applies to his state law claims against Defendants.

The relevant caselaw in this Circuit supports the application of the Tort Immunity Act's one-year statute of limitations in 745 ILCS 10/8-101 to state law claims against police officers. In *Pierce*, 2000 WL 1847778, at *2, the plaintiff alleged that Chicago police officers arrested and incarcerated him for drug and firearm violations without probable cause. Applying the Tort Immunity Act, the court dismissed Pierce's state law claims of false arrest and false imprisonment because they were brought more than one year after the claims accrued and, thus, were time-barred. *Id.* In *Cooper*, 1995 WL 399009, at *4, the plaintiff's claims against the

---

[4] 735 ILCS 5/13-202 provides in pertinent part: "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution . . . shall be commenced within 2 years next after the cause of action accrued . . . ."

8

Chicago Police Department and several of its officers arose from his arrest for murder. The plaintiff's state claim for false arrest accrued on August 25, 1989, and his state claims for malicious prosecution and false imprisonment accrued on December 13, 1990. Because the plaintiff did not file his original complaint until August 19, 1992, *i.e.* more than one year later, the *Cooper* Court declined to reinstate these previously dismissed state law claims as they were time-barred under the Tort Immunity Act. *Id.* at \*5. *See also Bodin v. McGannon*, No. 98 C 5392, 1999 WL 528492, at \*5 (N.D. Ill. July 19, 1999) (dismissing state law claim of false imprisonment against Village of Lake Zurich and two of its police officers, which was filed more than one year after the claim accrued, because it was time-barred under the Tort Immunity Act); *Harrell v. Sheahan*, 937 F. Supp. 754, 758 (N.D. Ill. 1996) (summary judgment granted in favor of defendant on prisoner's state law claim of false imprisonment against county sheriff, which accrued more than a year before it was filed because it was time-barred under the Tort Immunity Act).

Furthermore, the more specific statute of limitations contained in the Tort Immunity Act prevails in this case. *See Draghi v. County of Cook*, 985 F. Supp. 747, 750 (N.D. Ill. 1997) (emphasis in original) ("the specific Illinois statute that governs a particular category of tort claims (those brought against local government entities and their employees) necessarily prevails over the generic two-year limitations period (735 ILCS 5/13-202) where a *state law* tort claim is involved"). Long filed this lawsuit on April 30, 2001, nearly two years after his May 3, 1999 arrest and the June 21, 1999 dismissal of the disorderly conduct charge against him. Thus, we find that Long's state law claims of false arrest and false imprisonment are time-barred, and we dismiss Count III of the complaint.

## CONCLUSION

The Court fully understands why Mr. Long has litigated this lawsuit. Mr. Long sincerely believes that he was mistreated at the hands of the defendants. Yet, Mr. Long must understand that the law protects mistakes made by police officers who are given the difficult assignment of protecting our society, as outlined herein. For all of the reasons contained in this opinion, we must grant the defendants' motion to dismiss. (R. 4-1.) The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, against Mr. Long.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: August 6, 2001